May it please the Court, Douglas Northup for the Defendant's Appellants. I'd like to reserve three minutes of time for rebuttal, if I may. Your Honors, the District Court entered summary judgment following the prior appeal last July of 2013 on exactly the same grounds for the same reasons that this Court rejected over a year and a half ago. Well, Counsel, we didn't really reject it. We said, you know, maybe there needs to be another look. But we specifically said that we weren't controlling the outcome and we expressed no opinion on whether apportionment might or might not be required. We asked the District Court to take another look, and it did. So why don't we start from that point of view? Exactly, Your Honor. The Court's order said in the liability portion, Syntellect is therefore liable for damages stemming from utilization of the system. And then went on to say that the District Court should consider the nature of the cast claims as they apply to the indemnity provision and to other potentially liable parties. The District Court, relying on the language from the liability portion of the case, refused to consider what the other potentially liable parties did or how these various components worked. Well, the Court did explicitly say, look, the CATS settlement was paid solely to settle the CATS complaints claims. It went back to the contract wording again. And, you know, maybe we were inartful in describing what we wanted the Court to do, but it did look at everything all over again. And what's wrong with what it did, regardless of what we did last time? Tell us why what it did this time is wrong. Your Honor, as the Court noted, citing from the Culley case, that when multiple parties are liable, the allocation of the settlement is at least as important as the total amount of the settlement. And what the trial court did not do is look at all of those other parties because it said, as a matter of law, the other parties were irrelevant. There are numerous... Doesn't that imply that it looked at them? If it made a determination regarding whether or not those parties should be included, how can you say it didn't look at them? Because what the Court said was, it doesn't matter. I don't have to look at the other parties and what they did or didn't do and whether these are damages that should be allocated as or, you know, stemming from utilization of the system. He said, as a matter of law, under your ruling, I'm not even going to look at those other parties. You point me to the language in the district court's order where you said the district court made the ruling that the other parties were irrelevant. I've got the ruling there, and I'm not sure I can point quickly to the exact page, but that's certainly the gist of it, saying under the ruling that said that the indemnity applied, that it didn't matter because, based on the fact that we discussed when I was arguing this case the last time, that all of the calls at some point go through the IVR. That was accepted. It's never been disputed that the settlement was paid to settle Katz's claims. That was all in front of Your Honors the last time. And the Court should select the indemnity applies, and we accept that. Well, but the district court did explain at some length as to why the factual circumstances and the specifics of the contract did not admit of allocation. And so I guess you're, again, you're saying that the district court ignored your argument, but I think it didn't ignore it. It just disagreed with your argument. But what it didn't do, Your Honors, this situation is like the Culley case. And the Court said, well, they recognized the fact that an indemnity may apply is not the end of the inquiry. Because there's no question here, we have the language by Sintellect, and in fact, what the Court said. Sintellect is liable for damages stemming from utilization of the system. But there are many other parts and components. And as we discussed the last time we're here, 63 percent of the minutes in the settlement were after the call had left the IVR completely. But the Court looked at that and said, no, they actually all arose from the infringement and that that is a broad concept, the way the indemnity clause is written. And, Your Honor, that's where, respectfully, Judge Benitez erred. Because there are facts in the record, well supported, that talk about how these calls work. I mean, every call comes in, the first place it goes is the aspect switch. And what happens with the calls, then, when they're out of the IVR, 63 percent of the minutes have nothing to do with the IVR anymore. And Judge Benitez refused to consider any of that information. Sotomayor, I guess that's the part that I'm having difficulty with. He didn't agree with your argument, but I don't think that's a refusal to consider your argument. Well, what he didn't consider, Your Honor, was the evidence and the facts about what happens with the calls and where they go and whether they're damages stemming from utilization of the system. Again, there were indemnities, there were tenders that were made to other parties that manufactured these components of the system that are all crucial to their operation. We accept that the IVR is important to that and every call goes through that. But as in the Peter Coley case, you now have to go beyond that and say, okay, the indemnity applies, but what damages stem from utilization of the system? And the court below said all of them. I've looked at it again, and they all do. I have another question for you, which I'd appreciate your addressing. What, if any, importance should we attach to the fact that the clause in question, the indemnity clause, has been changed to be narrowed after the clause in effect here so that in the future you might not have these liabilities? Your Honor, none whatsoever. These contracts are negotiated. The notion that the contract was changed forever based on one example that counsel threw into their appellate brief here, the answer is each contract stands on its own. And this one is very, very broad. It is broad, Your Honor, but it's also limited, as in the Mel Clayton Ford case. And it says when a clause is limited, you have to look at what damages were caused by the indemnitor versus other potentially responsible parties. And if, for example, with the tenders that were given, I believe, to Aspect or Viya, other companies, they tender and said, okay, you're responsible for these damages, but ultimately ended up choosing to go after my client. They have that prerogative to do so, but when you start talking about what damages were caused by utilization of the system, that's where the facts exist in the record below, but we've not had our opportunity to explain that to a jury as opposed to having it decided on summary judgment. And again, this isn't a situation where Judge Benitez said, I'm looking at the facts and no reasonable jury could find in your favor. He felt constrained under this Court's ruling that given just the notion that all minutes or all calls at some point touched the IVR and that 100 percent of the settlement was of the CATS lawsuit, that that was enough and that there was no reason to consider these other parties. And if that were the case, Your Honor, then I think we've written, by simple act, in connection with the system out of the contract. It is a limited indemnity. It's not an unlimited indemnity, because not allowing us to talk about at different points what are the calls doing in different points of the system and which of the Let me stop you and just ask you this question about the nature of CATS's patents, because I think that's part of what led me to think that we needed to remand this last time. And I'll just be up front with you. Having looked at this again, it seems to me the district court got it right this time, but I thought you needed, your client deserved at least the opportunity to make the case. And I'll tell you what I may still be confused about. You can talk me out of my tentative position. As I understand it, CATS's patents basically covered two types of calls that are relevant to the facts here. One are the calls that came in and were resolved completely within the IVR system. Is that right? Well, not necessarily. There was discussion about how the case was settled between SoCalGas. I mean, CATS is a method patent. And it doesn't say, I mean, they never made, CATS never made any allegations. There was any infringement by SoCalGas. He gave very broad parameters about a call system that does certain things. One of them is the call comes in, and I'm just saying, pretend I'm CATS. I say, I've got a patent that says when the call comes in, I've got a system that allows it to be routed so that on an automated basis, you can achieve certain functions, right, make an appointment or, you know, whatever those things are. And you never have to talk to a live human being. So I've got a patent that covers that. And I thought he was saying, I've got a patent, my patents also cover the situation where the call comes in, you make the customer pick from a menu of options, and then it sends you out to the right type of operator. And the function of sending it out to the right type of operator, I got that covered too. And so as I understand the record, when the district court went back and looked at it again as we told him he needed to, he said, well, the CATS settlement covers those two kinds of calls. That encompasses 100% of what SoCal Gas paid for. And CATS was saying that my patents cover both those types of calls, so that's the end of the story. So where have I gone wrong? Well, I think that is accurate as to what CATS would allege, Your Honor. But he was saying the overall call system infringed. We have acknowledged the IVR is a part of that and an important part of that. But in terms of saying what damage did Sintelec cause under the apportionment theory, this is like the situation in Collier or in others where there are other people who were responsible according to Patz's allegations. But that's what I – that is what I thought might be the case when we had the case here the first time. But now it doesn't seem like that's true. See, I thought we had that diagram that showed the calls coming in, it would hit your client's IVR, and then it would go out to these other components. And I thought CATS was saying that I've got patents that independently read on those other components. And as I understand it now, all he was saying is that I've got – my patents basically cover the function of handling the calls within the IVR system, and if that doesn't work, funneling them out to the right type of human operator. And that's all that is really going on here. It's not that narrow. He says – he doesn't talk about any components. He just says if your system in these very broad parameters does certain things. And that's why, for example, the first thing that happens is a call comes in through the aspect switch, and that makes a determination which level of experience operator the call will go to. That's not even the IVR. There are the mainframe where the customer information is stored. There's communications and there are functions of these components going on after the call is even out with the operator. Counsel, if there's an ambiguity in this regard, does it make any difference that your client refused the tender of defense where some of these things could have been potentially ironed out or separated out? And if there's a problem, shouldn't that be at your feet? No, Your Honor. In fact, under California law, the law is clear that indemnities are strictly construed in favor of the indemnitor. If there is an ambiguity or lack of clarity here at all, it was a negotiated contract that's construed against indemnity. So the fact that you declined to defend should play no role? There's a question. I mean, you can say, okay, our client, based on your ruling, breached its duty to defend, and there are consequences to that, paying attorney's fees, for example. But it doesn't mean that suddenly the contract language doesn't say what it says. This is a situation where the fault, according to Katz's allegation, lies with various companies, including mine, and under the Peter Culley case and the others respectfully, that's the quintessential case where the evidence about what damages we caused, if they can prove it's 100 percent, so be it. But we still haven't gotten that opportunity. I see I'm running. You may save the rest of your time. We'll ask you to vacate the judgment, ma'am. Thank you. May it please the Court. Jason Wilson on behalf of Apelli Southern California Gas Company. I hear a lot of, I heard a lot of arguments that harken back to the liability stage of this case. I didn't hear a lot of argument about applying the Court's prior ruling and interpretation of the indemnity cause to the facts that we offered to the district court to show that Cintellect is properly apportioned 100 percent of the liability. In fact, Cintellect in their except of record doesn't even include the evidence that we proffered. This Court held that, as Cintellect's counsel stated, that Cintellect is responsible for all damages stemming from utilization of the system, Southern California Gas' utilization of Cintellect's system. So on remand then, our task was to present the district court with evidence that the damages we paid tied back to the gas company's use of Cintellect's system. And we did exactly that with three types of evidence that are not at all discussed by plaintiffs. First, we had an extensive declaration from Paul Battles where he explained how Cintellect's system worked in routing the calls and how he calculated the licensing fee. But let me stop you there because I'll just say the one thing that's bothered me about your side's case and part of the reason I think that led to the remand at least in my mind when you were here the first time is that I still don't understand why the settlement, why rather the license fee was calculated on a per minute basis as opposed to a per call basis. Because as I understand it, if the call comes in, it's fully resolved within the minutes. So that 37% of the minutes, that is going to be Cintellect's, right? Right. It's the 63% of the minutes that go on after you get out of the IVR. But as I understand it, Katz would say, my patents, you know, cover the call when it comes into the IVR and goes out to an operator, whether that subsequent time outside the IVR lasts a minute or ten minutes. He still would say that it's the functionality of sending the call out to the right human operator. That's what I've got covered, right? He said that the functionality of automation is what I have covered. And just a point of clarification, the Katz settlement wasn't based on a per minute. I mean, there was a minute calculation. But when Katz asked us to settle, when we asked to settle the case, Katz said, I want you to look at the types of calls you have, the nature of the call, and then if it falls into one of two different infringing services, which is a fully automated call, an automation plus a live operator, I want you to take the duration of those calls and pay us a license. But that's what I don't understand. Why does it matter if the call, after it leaves the IVR, lasts one minute or ten minutes? Who cares? Isn't he? Katz's perspective as the patent holder is, the entire duration of that call benefits from my innovation. Because once the call goes into the IVR system, it gets tagged with information. So that when it pops up with the live operator, the live operator gets information from going through the IVR that the IVR called out that says, oh, you know, this is Sam Smith, and he wants to report a leak. And he's also late on his payments. So while it's waiting, it's not as if it's waiting without the benefit of what Centelec's system already did, that when it's waiting. Right, but whatever Centelec did to infringe Katz's patents, it occurred at the moment the call was sent out, and then it's over, right? Well, I think Katz would frame it a little bit differently. What Katz would say is, if you offer certain acute services like, you know, pay a bill or report a gas leak, and that service is automated in any way by combining information from a computer database with the call, that's the combination, then that entire call infringes my patents. Now, if I understood your earlier comment correctly, for the entire duration of the call that synthesized information is up and available to the live operator. Is that true? Yes. When it pops up to the live operator, the live operator doesn't get. So the live person is taking advantage of the patented method of putting together the information. Yes. Or at least has the opportunity to take advantage of the infringing system. Yes. Okay. What they were selling was an advantage to the gas company, even though I think at the time only 16 percent of the calls were fully automated. It was still an advantage to the gas company because operators could go through the calls more quickly because it passed through a flow chart and got tagged with information. Okay. What were the other two pieces of evidence that you wanted us to? So first, the declaration of Paul Battles. Second, it's a misnomer and not accurate that Katz, quote, unquote, was concerned about minutes. Katz was concerned about the nature of the calls, and that's two letters from Katz. One is supplemental excerpt of record 104, which is an August 28, 2007 letter from Katz saying, hey, I want you to break up your calls into categories. Certain categories are infringing. Other categories are not. For instance, Katz said, using a live operator alone is not infringing. And then secondly, when we finally entered into the agreement, that was from Mr. Katz's agent. Mr. Katz himself, again, said, hey, you've got to divide it up by calls. So the reason why, and the last piece of information is, we put into evidence before the district court an admission from CINELEC's own expert, Mr. Ladd, who said that it would not be possible to read upon the Katz's patent without the presence of the CINELEC IVR. So in order for us to fall within that allegation of infringement by Katz, their own expert said that it was necessary to use an IVR, and in this case it was CINELEC's IVR, and that is supplemental of excerpt record 194-95. So it's not as if the district court just said, ah, you know, I'm just going to do it all over again. I'm not going to pay attention to the evidence. The district court had a bunch of evidence that we provided to the district court for them to consider, and they found that the evidence that CINELEC offered wasn't material to determining whether there was a causal link between CINELEC's system and the damages we paid. And so that's what happened in the prior remand, in the remand. But you, I mean, you wouldn't dispute, I guess, that the license fee could just as easily have been calculated on a per-call basis? In some sense, I suppose you could do that. I think it would be more arbitrary because, you know, what if Katz charged a dollar a call, and some calls were short and some calls were long? So, you know, ultimately this was the take it or leave it offer that Katz gave to us, and again, we only paid damages for the two categories of calls that their system enabled. And he's the one who insisted upon this per-minute calculation? Well, he insisted, go to the nature of the call and then multiply the calls by the minutes. Katz did not contend, Katz has never contended that the use of a live operator alone is an infringing service. But there are zero such calls in your system? There are zero such calls in our system. A hundred percent of the calls in our system had the benefit of automation that CINELEC's system provided. And that's basically what Katz is after. If you look at paragraph 26 of Katz's complaint, he says, my innovation is I connect calls up with a computer database. And whether that call is fully automated or automation plus live operator, it takes advantage of what Katz claims to be his innovation, the integration of the two. I don't have anything further unless you have any questions. I don't believe there are. Thank you. Thank you. Mr. Murtha, if you have about a minute and a half, a little more of that. I'll be brief, Your Honor. Counsel talks about the Battles extensive declaration. Mr. Battles was deposed like three times in the underlying case. And the evidence about how the system worked and what did what is highly disputed, and that's what has yet to be considered. We would respectfully submit how SoCal Gas and Katz structure their settlement may be relevant to the reasonableness, but it doesn't affect the allocation. And, for example, they talk about Mr. Ladd said, well, the call center can't function without the IVR. He also said, as did Mr. Battles, the call center can't function without any of these particular components. And, again, it's no different than the general contractor being held liable when there's work performed by a number of different people. And the question here, okay, it's been held. What's your response to the argument that the evidence shows that when a previously computerized call is routed to a live operator, information is generated for the use of that live operator that is the result of the use of the infringing system? That is part of what is disputed here. In some circumstances, the IVR can provide information to the operator, but not in every circumstance. And, in fact, it's the aspect switch that makes the decision which is the best operator to send this to in the first place. So, again, we live with the fact that there's been a determined to be a breach here. But unless this agreement is read that Syntellect agrees to defend and indemnify as an insurer in connection with the entire automated call center, all of its components, and even call paths that were written by SoCal Gas after the IVR was put into place, the system wasn't even changed between 2001 and 2007 when the lawsuit was breached. 2001 wasn't put in place. And that's all we're asking. Make our client pay for the damages caused by their breach, but don't turn them into an insurer and write by Syntellect in connection with the system out of this limited agreement. We respectfully submit that the Mel Clayton case and the Peter Coley cases directly apply here. We think the Court got it right on that the last time, and all we ask is for our day in court. Thank you, counsel. Thank you. The case just argued as submitted, and we appreciate the arguments that both of you have provided.
judges: Graber, Rawlinson, Watford